IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION No. 07-4313 |
| | : | |
| v. | : | |
| | : | |
| FERNANDO PEÑA | : | CRIMINAL ACTION No. 03-487-09 |

## MEMORANDUM

**Padova, J.**                                                                 **July 21, 2008**

Before the Court is Fernando Peña's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Motion is denied.

## I.    BACKGROUND

The Superseding Indictment in this case charged Peña and twelve co-defendants with conspiring to distribute in excess of 50 grams of cocaine base in Reading, Pennsylvania, in violation 21 U.S.C. § 846. After a jury trial before the Honorable Franklin Van Antwerpen, Peña was convicted of this charge. Thereafter, the case was transferred to the undersigned for sentencing, and on March 14, 2005, we sentenced Peña to 260 months of incarceration, five years of supervised release, a $1,000 fine, and a $100 special assessment.

Peña appealed to the United States Court of Appeals for the Third Circuit, arguing that he was a competitor rather than a member of the drug dealing conspiracy charged in the case, and that we erred in permitting the Government to call new witnesses at sentencing in order to enhance his guideline calculation. The Third Circuit rejected these claims, and affirmed his conviction and sentence on January 17, 2007. See United States v. Keyes, 214 Fed. Appx. 145 (3d Cir. 2007). Peña subsequently filed a petition for writ of certiorari, which the United States Supreme Court denied on June 25, 2007. Peña v. United States, 127 S. Ct. 3030 (2007). Thereafter, he timely filed the

instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").

## II.    LEGAL STANDARD

Peña has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  "Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors."  United States v. Rishell, Civ. A. Nos. 97-294-1, 01-486, 2002 WL 4638, *1 (E.D. Pa. Dec. 21, 2001).  In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).

## III.    DISCUSSION

Peña asserts six grounds for habeas relief.  We will address each in turn.

### A.    Presentation of Perjured Testimony

Peña first argues that his conviction should be reversed because the Government bribed cooperating witnesses to commit perjury at trial in violation of 18 U.S.C. § 201(c)(2), which prohibits individuals from "directly or indirectly giving, offering, or promising anything of value to any person as a witness upon a trial . . . before any court . . . ."  Peña contends that proof of the

Government's misconduct can be found by "analyzing and contrasting the [witnesses'] testimonies," which show that "cooperating witnesses who never before mentioned [Peña] in any of their statements before the police and the grand jury, suddenly mentioned [him] after the prosecutorial attorney purposely addressed the questions to implicate [Peña]." (Peña Reply Br. at 3.)  According to Peña, we should find that the witnesses' testimony was untruthful and reverse his conviction because, "in the absence of such testimonies, the government had [no] 'consistent evidence against Petitioner to enforce his conviction.'" (Id. at 4.)

It is "firmly established that it is 'the jury's prerogative to decide all questions of credibility.'" United States v. Haut,107 F.3d 213, 220 (3d Cir. 1997) (quoting United States v. Gambino, 926 F.2d 1355, 1367 (3d Cir. 1991)).  Indeed, "[i]t is a basic tenet of the jury system that it is improper for a district court to 'substitute[] [its] judgment of the facts and the credibility of the witnesses for that of the jury.  Such an action effects a denigration of the jury system . . . .'" Id. (quoting Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir. 1960) (alterations in Haut)); see also id. ("'Under our system of jurisprudence a properly instructed jury of citizens decides whether witnesses are credible.'" (quoting United States v. Giampa, 758 F.2d 928, 935 (3d Cir. 1985))).

Peña asks us to reject the apparent credibility determinations of the jury and find that certain cooperating witnesses were lying, having been "bribed" by the Government.  The law is plain that the Government may not knowingly present false testimony and that if does so, the defendant's conviction is tainted.  Napue v. Illinois, 360 U.S. 264, 269 (1959) (noting that "implicit in any concept of ordered liberty" is "[t]he principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . .").  However, Peña offers no evidence that the Government knew that any testimony it was presenting in this case was false.  Moreover,

3

on cross-examination at trial, Peña's attorney was free to, and did, challenge various witnesses' credibility by inquiring about their failure to identify Peña as a member of the conspiracy in prior statements and/or testimony, as well as their plea agreements with the Government. (See, e.g., N.T. 2/10/04, at 1-287:15 to 1-289:25; N.T. 2/12/04, at 3-143:3 to 3-150:9, 3-339:5 to 3-341:11.) Under these circumstances, the jury considered the very allegations that Peña is making here and nonetheless credited the witnesses' testimony as it saw fit. Applying established law, we will not second-guess the jury's conclusions in that regard and find that Peña was wrongfully convicted. Peña's § 2255 Motion is therefore denied with respect to this ground for relief.

B. Ineffective Assistance of Counsel

Peña asserts two claims of ineffective assistance of counsel. First, he asserts that counsel was ineffective for failing to file a motion requesting that his trial be severed from that of the six co-defendants who were tried along with him. Second, he asserts that counsel was ineffective for failing to file a motion in limine seeking to prohibit the Government from introducing evidence of phone numbers at trial.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Id. at 687. To prove constitutionally inadequate representation, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, i.e., that the performance was unreasonable under prevailing professional standards, and (2) that he was prejudiced by the attorney's performance. Id. Prejudice arising from an attorney's unreasonable performance is proven if "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability

4

sufficient to undermine confidence in the outcome." Id.   As such, counsel cannot be found to be

ineffective for failing to pursue a meritless claim.  See United States v. Sanders, 165 F.3d 248, 253

(3d Cir.1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an

attorney's failure to raise a meritless argument."); see also Parrish v. Fulcomer, 150 F.3d 326, 328

(3d Cir.1998).

1.    Failure to Request Severance

Federal Rule of Criminal Procedure 8(b) provides in relevant part that an "indictment or

information may charge two or more defendants if they are alleged to have participated in the same

act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.

. . . All defendants need not be charged in each count."  Fed. R. Crim. P. 8(b).  As a general rule,

defendants who are jointly indicted should be jointly tried.  United States v. Sebetich, 776 F.2d 412,

427 (3d Cir. 1985).  This is because joint trials "promote efficiency and serve the interests of justice

by avoiding the scandal and inequity of inconsistent verdicts." United States v. Urban, 404 F.3d 754,

775 (3d Cir. 2005) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)); see also United

States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991) (where defendants are charged with a single

conspiracy and the same evidence would be presented at separate trials, the public interest in judicial

economy favors a joint trial).  Nevertheless, under Criminal Rule 14(a), "[i]f the joinder . . .  of . .

. defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant . . . ,

the court may . . . sever the defendants' trials . . . ."  Fed. R. Crim. P. 14(a).

Such severance is only appropriate "if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable

judgment about guilt or innocence." Zafiro, 506 U.S. at 539.   "[P]rejudice should not be found in

a joint trial just because all evidence adduced is not germane to all counts against each defendant."
Id. (citing United States v. Sandini, 888 F.2d 300, 307 (3d Cir. 1989)).  Similarly, defendants "'are
not entitled to severance merely because they may have a better chance of acquittal in separate
trials.'"  Urban, 404 F.3d at 775 (quoting Zafiro, 506 U.S. at 540).  "In determining whether there
is prejudice, the court must consider 'whether the jury can reasonably be expect to compartmentalize
the evidence . . . .'"  Sebetich, 776 F.2d at 427 (quoting United States v. De Larosa, 450 F.2d 1057,
1065 (3d Cir. 1971)).  The burden of showing prejudice from joinder lies with the defendant seeking
severance, and the decision whether to sever lies within the sound discretion of the trial judge.
Eufrasio, 935 F.2d at 568 (citing United States v. DePeri, 778 F.2d 963, 983 (3d Cir. 1985); United
States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981)).

Peña's severance argument ultimately depends upon a factual premise that counsel's failure
to request severance, and the district court's resulting failure to sever, caused him prejudice.  In this
regard, Peña contends that he was prejudiced by being tried alongside his co-defendants.  He asserts
that there was insufficient evidence at trial to convict him of conspiracy and, thus, he must have been
convicted based on evidence relevant only to his co-defendants.[1]  However, on direct appeal, the
Third Circuit expressly concluded that there was sufficient evidence adduced at trial to establish that
Peña was a member of the charged conspiracy, explaining that "viewing the evidence in the light most
favorable to the government, a reasonable jury could have concluded beyond a reasonable doubt that
[Peña was] supplied with drugs for distribution by Perez and Acevedo-Hernandez and knew of, and
intended to benefit from, the mutual control of the area."  Keyes, 214 Fed. Appx. at 152.  Thus,

---

[1]Peña and all six of his co-defendants at trial were charged with conspiracy.  The co-
defendants, however, were also charged with various counts of possession with intent to distribute
cocaine base and other related crimes.

contrary to Peña's argument, the Third Circuit has already determined that there was sufficient evidence on which to convict him irrespective of any improper inferences that the jury could have conceivably drawn from evidence introduced against Peña's co-defendants.

Moreover, we find that trial in this case was not so complex or confusing as to give rise to an inference, much less a conclusion, that the jury was unable to distinguish the evidence relevant to Peña from that relating only to his co-defendants. Although seven defendants (including Peña) were tried together on twenty separate counts, trial lasted only six days, and there were only four days of witness testimony. Furthermore, the court correctly instructed the jury that it was to "give separate consideration to each charge and each Defendant, and not think of them as a group." (N.T. 2/13/04, at 4-315.) "We presume that the jury follows such instructions." Urban, 404 F.3d at 776.

Given the policy preference for trying co-conspirators together jointly in one trial, see Eufrasio, 935 F.2d at 568, and Peña's failure to suggest any basis on which we could reasonably conclude that the jury was unable to properly compartmentalize the evidence against the various defendants in this case, we find that Peña has failed to establish that he suffered any prejudice on account of his counsel's failure to request a severance. Peña's § 2255 Motion is, consequently, denied with respect to this ground for relief.

2.      Failure to File Motion in Limine to Exclude Phone Numbers

Peña also asserts that trial counsel was ineffective in failing to file a motion in limine requesting that the trial court exclude "the evidence regarding the phone numbers." (§ 2255 Mot. at ¶ 12F.) At trial, the Government introduced into evidence cell phone records showing that the various co-defendants/co-conspirators were in telephone contact with one another. With respect to Peña in particular, an intelligence analyst with the Reading Area Violent Crimes Task Force testified

7

that the records showed that co-defendant Mustafa Sheriff called Peña 217 times, that co-defendant

Calvin Goodrich called Peña 62 times, and that co-defendant Andrew Cruz called Peña 108 times.

(N.T. 2/13/04, at 4-166:7 to 4-167:10.)  On cross-examination, Peña's counsel questioned the analyst

as to how she knew that the number Sheriff, Goodrich, and Cruz called on these occasions belonged

to Peña, noting that the cell phones' directories indicated that the number belonged to "Moya" and

"Dawn Lizzie," neither of which were known nicknames for Peña.  (Id. at 4-180:22 to 4-182:17.)  In

addition, Peña's counsel argued in his closing that there was no basis on which the calls to Moya and

Dawn Lizzie could be attributed to Peña.  (Id. at 4-286:2-25.)

Peña's § 2255 claim, while not well defined, appears to concern the phone numbers that were

attributed to him at trial.  Specifically, he appears to argue that counsel should have filed a motion

in limine to exclude the evidence that certain phone numbers belonged to him, instead of merely

raising questions regarding the attribution of the numbers on cross-examination and in closing.  While

we are unclear as to the precise legal basis on which Peña believes his counsel should have moved

to exclude this evidence,[2] we find that counsel's conduct with respect to this evidence was not

objectively unreasonable and did not prejudice Peña.

In order to show that counsel's performance was objectively unreasonable, a defendant must

---

[2]On direct appeal, Peña's co-defendants, Calvin Goodrich and Angel Castillo-Bienvenido, argued that the phone number evidence against them should have been excluded as hearsay.  The Third Circuit held that the trial court "did not abuse its discretion in allowing [the analyst] to describe certain telephone number[s] as belonging to Goodrich." 214 Fed. Appx. at 156.  It further held that "a proper foundation should have been laid for the phone records analyzed by [the analyst]," but that such error did not affect Castillo-Bienvenido's substantial rights under a plain error standard because the phone records were "of minimal significance in light of the other overwhelming evidence of Castillo-Bienvenido's guilt."  Id.  In that regard, it noted: "Though corroborative of the witness testimony regarding the co-defendants' association with each other, the telephone records did not 'make the case'; it was obviously the credibility of numerous cooperating witnesses offered at trial that convicted the Appellants."  Id. at 156-57.

show that his counsel made errors so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "In evaluating counsel's performance, [the Court is] 'highly deferential' and 'indulge[s] a strong presumption' that, under the circumstances, counsel's challenged sanctions might be considered sound . . . strategy." Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 689). Here, counsel plainly considered the evidence about which Peña now complains and developed a strategy for addressing that evidence – namely, attacking it on cross-examination and in closing argument. While another strategy, such as filing a motion in limine, might also have been effective, "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better. Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689). We therefore find that counsel's conduct fell within the wide range of strategic decisions that counsel is entitled to make, was not "objectively unreasonable" and did not deny Peña "the 'counsel' guaranteed [to him] by the Sixth Amendment." Strickland, 466 U.S. at 687.

We also conclude that the introduction of the cell phone records did not prejudice Peña. As detailed in the Third Circuit's opinion on direct appeal, the other evidence against Peña was considerable. See generally 214 Fed. Appx. at 151-52. Cooperating witness Kenneth Williams testified that Peña sold drugs at 50 South 10th Street, and that co-defendant Wilfredo Ortiz also sold at that location for Peña. (N.T. 2/10/04, at 1-219:12-24, 1-224:10-22.) Williams further testified that Peña worked with certain of his co-defendants packaging drugs at 37 South 9th Street. (Id. at 1-230:25 to 1-232:5.) Jasmine Lawson, another cooperating witness, testified that she sold drugs in the area of 10th and Franklin streets in the summer of 2002; that one could only sell drugs from that location if you had the approval of Peña, Mustafa Sheriff, Angel Castillo-Bienvenido or Miguel

9

Acevedo-Hernandez, all of whom were involved with drug trafficking in the area; and that on at least one occasion, she packaged crack cocaine for Peña.  (N.T. 2/12/04, at 3-95:3 to 3-97:4; 3-99:3 to 3-101:21; 3-103:8-18.)  Yet another witness, Lydia Carrera-Aponte testified that she observed Peña and three of his co-defendants selling crack cocaine in her apartment building.  (Id. at 3-176:17 to 3-177:14.)

In light of this evidence, we find, just as the Third Circuit found with regard to Peña's co-defendants, Calvin Goodrich and Angel Castillo-Bienvenido, that the telephone records, although corroborative of the witness testimony, simply did not "make the case" against Peña.  Keyes, 214 Fed. Appx. at 156.  Rather, "it was obviously the credibility of numerous cooperating witnesses offered at trial that convicted" him.  Id. at 156-57.  Peña's § 2255 Motion is therefore denied with regard to this ground for relief.

C.      Use of Prior Convictions to Enhance Sentence

Peña next argues that we erred in considering prior state convictions that were not felonies when we calculated his criminal history for sentencing purposes.  Specifically, Peña argues that consideration of his prior misdemeanor convictions was in contravention of the Supreme Court's decision in Lopez v. Gonzalez, 549 U.S. 47, 127 S. Ct. 625 (2006), which held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."  Id. at 633.  Peña misunderstands the Lopez decision.

Lopez involved removal proceedings for a permanent resident of the United States, Jose Antonio Lopez, who was convicted under state law of aiding and abetting another person's possession of cocaine.  The removal proceedings were commenced pursuant to a provision in the Immigration and Nationality Act ("INA") that provides for removal of individuals convicted of an "aggravated

felony." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" to include "illicit

trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section

924(c) of title 18)." 8 U.S.C. § 1101(a)(43)(B). Although the INA does not define "illicit trafficking,"

Title 18 defines that term to include "any felony punishable under the Controlled Substance Act (21

U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2). Lopez's drug offense was a felony under the applicable

state law, but did not constitute a felony under the Controlled Substance Act ("CSA"). 127 S. Ct. at

629 (citing S.D. Codified Laws, §§ 22-3-3, 22-42-5; 21 U.S.C. 844(a)). Lopez therefore argued that

his offense did not constitute an "aggravated felony" under the INA. The Supreme Court analyzed

the precise statutory language in the INA and the CSA, and agreed that Lopez's state felony

conviction did not constitute an "aggravated felony" under the INA, reiterating that an "aggravated

felony" is "a felony punishable under the Controlled Substance Act," and holding that "a state offense

constitutes a 'felony punishable under the Controlled Substance Act' only if it proscribes conduct

punishable as a felony under that federal law." Id. at 633.

Putting the Lopez holding into context, it becomes clear that Peña's reliance on that holding

is misguided. Contrary to Peña's assertion, Lopez in no way prohibits a sentencing court applying

the Federal Sentencing Guidelines from considering state convictions that would not constitute

felonies under federal law in calculating a defendant's criminal history.[3] Rather, it merely construes

---

[3]In United States v. Estrada-Mendoza, 475 F.3d 258 (5th Cir. 2007), on which Peña relies, the United States Court of Appeals for the Fifth Circuit found Lopez to affect a defendant's offense level calculations under the Guidelines under the specific circumstances of that case, which are readily distinguishable from those in the instant case. Estrada-Mendoza involved an individual who had been convicted of unlawfully entering or remaining in the United States pursuant to 8 U.S.C. §§ 1325-26. With such a conviction, U.S.S.G. § 2L1.2(b)(1) provides for an eight level increase in the defendant's offense level if he was "previously deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony." The Fifth Circuit noted that § 2L1.2(b)(1) adopts the INA definition of "aggravated felony," 475 F.3d at 260 (citing Lopez, 127 S. Ct. at 627),

the meaning of "aggravated felony" as used in the INA.  Notably, the Guideline provisions that we used in calculating Peña's criminal history points never used that term.  Moreover, the Guidelines explicitly permit a sentencing court to consider state misdemeanor convictions in calculating a defendant's criminal history points.  <u>See</u> U.S.S.G. § 4A1.2(c).  Accordingly, Peña's reliance on <u>Lopez</u> is unavailing, and he has provided us with no basis on which to conclude that we otherwise erred in considering his misdemeanor convictions in calculating his criminal history.  Peña's § 2255 Motion is therefore denied with respect to this ground for relief.

D.    <u>Enhancement of Sentence Based on Facts Not Found Beyond a Reasonable Doubt</u>

Peña next argues that we erred in enhancing his sentence based on facts that the jury did not find beyond a reasonable doubt.  Specifically, Peña contends that we erred in enhancing his sentence based on drug quantities, his role as a leader, supervisor and/or manager, and his routine use of a firearm, when the jury did not find those facts beyond a reasonable doubt.

As a general rule, a defendant may not use a § 2255 Motion to relitigate issues that were litigated on direct appeal.  <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n.4 (3d Cir. 1993).  On direct appeal, Peña argued, just as he does here, that we erred in considering factors not proven to a jury beyond a reasonable doubt.  The Third Circuit, applying <u>United States v. Booker</u>, 543 U.S. 220 (2005) (holding that the right to jury trial is violated when defendant's sentence is increased beyond statutory maximum based on judge's findings of fact beyond those established by a guilty plea, a jury verdict proved beyond a reasonable doubt, or those admitted by defendant), explicitly rejected this argument,

---

and therefore held that the analysis of <u>Lopez</u> applied so that the eight level increase could not be imposed for a state conviction unless the crime constituted a felony under the CSA.  <u>Id.</u> at 261. U.S.S.G. § 2L1.2(b)(1) is not at issue in the instant case and, thus, <u>Estrada-Mendoza</u> provides no meaningful guidance here.

12

explaining as follows:

> We have reviewed the record in this case to determine whether the district court erred in relying upon judge-found facts to enhance Peña's sentence beyond the statutory maximum for his crime. Peña was convicted of conspiracy to distribute cocaine base of 50 grams under 21 U.S.C. § 846. Peña J.A. 1397. The maximum penalty under the statute is life imprisonment. 21 U.S.C. § 841(b)(1)(A). Peña was sentenced to 260 months in prison, below the statutory maximum. Peña J.A. 1461.
>
> At the sentencing hearing held on March 14, 2005, over Peña's objection, the Government called Mustafa Sheriff and Manuel Perez to testify to the quantity of crack cocaine Peña distributed during the course of the conspiracy, his role in the conspiracy, and his possession of a gun. Peña J.A. 1426-52. Based on this testimony, the district court found, by a preponderance of the evidence, that he was responsible for the distribution of 1.5 kilograms of crack cocaine, was a leader/supervisor of the organization, and had possessed a firearm in connection with the offense. Peña J.A. 1454-57. Those findings, to which Peña has presented no factual rebuttal, made his offense level 42 and, with his criminal history of VI, his guideline sentencing range was determined to be 360 months to life. After considering the advisory Sentencing Guidelines and all relevant "3553(a) factors," including the seriousness of the offense and Peña's extensive criminal history, the court sentenced Peña to 260 months incarceration and five years supervised release. Peña J.A. 1457, 1459-61. This sentence was within the range allowed by statute, which imposed a mandatory minimum sentence of 10 years imprisonment and a maximum term of life imprisonment.
>
> We find the sentencing judge correctly applied the Guidelines in an advisory capacity in Peña's case, establishing that the applicable guideline range under the Sentencing Guidelines would be 360 months to life. In sentencing Peña to 260 months in prison, the judge explicitly acknowledged that the Sentencing Guidelines were advisory. We find the sentence imposed to be reasonable, and we therefore affirm.

Keyes, 214 Fed. Appx. at 154-55 (footnote omitted).

Peña nevertheless argues that there are changed circumstances that warrant addressing this

13

sentencing issue anew.  A defendant may relitigate an issue that was adjudicated on direct appeal if there is "newly discovered evidence that could not reasonably have been presented at the original trial, a change in applicable law, incompetent prior representation by counsel, or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims . . . ."  United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979) (footnotes omitted).  Peña appears to contend that there was a "change in applicable law," as he asserts that the Supreme Court's decision in Cunningham v. California, 549 U.S. 270 (2007), constitutes a "new or changed circumstance" that warrants reconsideration of his Booker argument.[4]  However, Peña does not state how Cunningham changed the law, much less explain how any such change should result in a reversal of his sentence.

Further, the Third Circuit has stated that Cunningham "stands for the proposition that judicial determinations of aggravating sentencing factors violates the Sixth Amendment when performed under a mandatory sentencing scheme."  United States v. Williamson, No. 07-1373, 2008 WL 948316, *1 (3d Cir. Apr. 9, 2008).  Accordingly, where, as here, we were applying the non-mandatory Guidelines, and "found facts that increased the applicable Guideline range, not facts that raised the sentence above the statutory maximum," Cunningham is simply inapposite.  Id. (rejecting argument that Cunningham precludes a sentencing court from "making findings necessary for a firearm enhancement and determination of drug quantity").  We therefore deny Peña's § 2255 Motion with respect to this ground for relief.

---

[4]Cunningham is the only case Peña cites that both post-dates the Third Circuit's January 17, 2007 decision on direct appeal and is binding on this Court.

E.     Sentencing for Crime That Was Not Proven Beyond a Reasonable Doubt

In his next claim, Peña asserts that the "sentencing court violated [his] Fifth Amendment Rights of due process when it ignored that there was in this case a complete absence of material and physical evidence to punish Petitioner for a crime that cannot be proven 'beyond a reasonable doubt.'" (§2255 Mot. at ¶ 12E.)   According to Peña, "the Government presented at trial only testimonial evidences [sic] from cooperating witnesses," which were "contradictory and inaccurate." (Id.) There is no way to understand this claim except as a claim of insufficient evidence, which the Third Circuit has already addressed and rejected.  See DeRewal, 10 F.3d at 105 n.4 (stating that defendant may not use § 2255 Motion to relitigate issues that were litigated on direct appeal). Accordingly, we deny Peña's Motion with respect to this ground for relief as well.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION No. 07-4313 |
| | : | |
| v. | : | |
| | : | |
| FERNANDO PEÑA | : | CRIMINAL ACTION No. 03-487-09 |

**ORDER**

     **AND NOW,** this 21st day of July, 2008, upon consideration of Defendant Fernando Peña's

Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Criminal Docket No.

508), and all attendant and responsive briefing, **IT IS HEREBY ORDERED** that:

    1.    The Motion is **DENIED**.

    2.    As Defendant has failed to make a substantial showing of the denial of a constitutional

            right, there is no basis for the issuance of a certificate of appealability.

    3.    The Clerk is directed to **CLOSE** Civil Action No. 07-4313.

                    BY THE COURT:


                     /s/ John R. Padova, J.
                     John R. Padova, J.